**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Harry Herman Packer

    v.                          Case No. 17-cv-260-PB
                                      Opinion No. 2018 DNH 113
Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration


**MEMORANDUM AND ORDER**


Harry Herman Packer challenges the denial of his claim for
social security disability insurance (SSDI) benefits and
supplemental security income (SSI) under Title II and Title XVI
of the Social Security Act. 42 U.S.C. § 423; 42 U.S.C. § 1381a.
He argues that the administrative law judge (ALJ) erred by
determining that his residual functional capacity (RFC) was
greater than the evidence showed and by finding that he could
still perform some work at step five. The Acting Commissioner
moves for an order affirming the decision. For the following
reasons, I affirm.


## I.    BACKGROUND

### A.   Facts

In accordance with Local Rule 9.1, the parties have

submitted a joint statement of stipulated facts.  Doc. No. 17.

Because that joint statement is part of the court's record, I

only briefly discuss the facts here.  I discuss further facts

relevant to the disposition of this matter as necessary below.

Packer was a 41 year-old man at the time of his amended

alleged onset date.  Administrative Record (AR) at 23, 127.  He

had worked as "a vinyl cutter . . . van driver . . . auto parts

counter [delivery man] . . . and manager [of an] auto parts

[store]," prior to his application for benefits.  AR at 34.

Packer is morbidly obese and has several attendant physical

impairments including type II diabetes, diabetic neuropathy,

orthostatic hypertension, high cholesterol, and osteomyelitis,

which led to the amputation of one of his toes.  AR 23, 30.  He

claims that his neuropathy affects his coordination and fine

motor skills in his hands.  AR 29.  He has also been a three-

pack-a-day smoker for a decade and suffers restrictive lung

disease and sleep apnea as a result.  AR 23-24.  Additionally,

Packer suffers from several mental impairments, including

depression, an anxiety disorder, and a personality disorder.  AR

31.  He claims that his personality disorder prevents him from

getting along with others, which led to his termination from

several jobs.  AR 385.

Packer's first physical problem was chest pain, which he began experiencing in 2008.  AR 27.  After suffering this initial chest pain, he stopped playing sports, but continued to work as a manager at an automotive parts store until 2012.  AR 27-28, 385, 390.  He has not worked regularly since 2012, spending most days in his room, watching television and playing video games up to 15 hours a day.  AR 391.  He is able to perform basic household chores such as cooking, cleaning, and shopping, but does not do these chores because his mother and girlfriend do them for him.  AR 26.  His apathy towards completing even basic tasks extends to his use of the bathroom; rather than going to the bathroom, he keeps a bucket near his bed.  AR 26.

**B.   Procedural History**

Packer filed claims for both SSDI and SSI on January 28, 2014.  His amended alleged onset date was June 1, 2013.[1]  AR 115. The Social Security Administration denied his claims both for

---

[1] Packer initially alleged in his claim for SSDI that his disability onset date was June 1, 2013, while in his claim for SSI, he alleged that he had been disabled on October 9, 2012. AR 212, 214.  At his hearing before the ALJ, Parker amended his disability onset date for all claims to June 1, 2013.  AR 115.

SSDI and SSI on September 11, 2014.  AR 155, 158.  On September
15, 2014, he requested a hearing before an Administrative Law
Judge (ALJ).  AR 161.

The ALJ conducted the hearing on December 29, 2015.  AR 43.
The ALJ denied Packer's claims for SSDI and SSI in a written
decision on March 16, 2016.  AR 36.  In the decision, the ALJ
applied the five-step analysis required by 20 C.F.R. § 404.1520
(for SSDI claims) and 20 C.F.R. § 416.920 (for SSI claims).  At
step one, the ALJ determined that Packer had not engaged in
substantial gainful activity since his amended alleged onset
date of June 1, 2013.  AR 20, 23.  At step two, the ALJ
determined that Packer had the following severe impairments:
"diabetes mellitus type II with diabetic neuropathy, obesity,
personality disorder, and anxiety disorder."  AR 23.  At step
three, the ALJ determined that Packer did not have any of the
impairments listed in 20 C.F.R., Subpart P, Appendix 1, which
would render him disabled per se.  AR 25.  At step four, the ALJ
determined that Packer had a RFC to do "sedentary work as
defined in 20 CFR [§] 404.1567(a) and [§] 416.967(a)," and that
he also:

"[can] lift and carry 10 pounds frequently and 20 pounds
occasionally[;]

4

cannot climb ladders[,] ropes[,] and scaffolds[;]

can occasionally climb ramps and stairs, balance, stoop,
crouch, and crawl[; and]

may only have brief and superficial interaction with the
general public."  AR 27.

The ALJ determined that, in light of this RFC, Packer could not

return to his past relevant work.  AR 34.  At step five, after

considering the opinion of a vocational expert, the ALJ

determined that Packer could work in a number of other jobs that

existed in the national economy, including, "hand package

inspector," "price marker," and "electric assembler."  AR 35.

The ALJ found that Packer was not disabled and denied his claims

for both SSDI and SSI.  AR 36.

Packer petitioned the Appeals Council to review the ALJ's

decision, but the Appeals Council denied his request for review.

AR 1.  Packer filed a complaint for judicial review under 42

U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) on June 26, 2017.

Doc. 1.


## II.  <u>STANDARD OF REVIEW</u>

I am authorized under 42 U.S.C. § 405(g) to review the

pleadings submitted by the parties and the administrative record

and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  That review is limited, however, "to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the ALJ's findings of fact, as long as those findings are supported by substantial evidence.  Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770.  If, however, the ALJ "ignor[ed] evidence, misappl[ied] the law, or judg[ed] matters entrusted to experts," her findings are not conclusive. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  The ALJ determines issues of credibility and draws inferences from evidence in the record. Irlanda Ortiz,

955 F.2d at 769.  The ALJ, and not the court, must resolve conflicts in the evidence.  Id.

### III. ANALYSIS

Packer moves to reverse the decision of the ALJ because the ALJ determined that his residual functional capacity (RFC) was greater than the evidence showed and incorrectly found that he could still perform some work at step five.  Doc. 9 at 4, 11, 13.

**A.  Residual Functional Capacity**

Packer argues that the ALJ's RFC finding was not supported by substantial evidence because it failed to take into account both Packer's personality disorder (when determining his mental RFC) and his limited use of his hands (when determining his physical RFC).  Doc. 9 at 4, 11.

1.  Mental RFC: Personality Disorder

Packer argues that the doctors who evaluated him all formed the uncontroverted expert opinion that he has a personality disorder that renders him unable to get along with fellow employees, and that the ALJ erred by omitting this limitation from his RFC.  Doc. 9 at 8-9.

An ALJ is a lay person when it comes to medical evidence, and therefore she "cannot ignore medical evidence or substitute [her] own views for uncontroverted medical opinion." Nguyen, 172 F.3d at 35 (citing Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994)).  Where medical experts state that a claimant has a particular limitation, an ALJ must accept that expert opinion unless there is another expert opinion that contradicts it.  Id.

Several doctors evaluated Packer's mental health over the course of his initial application for SSDI and SSI benefits.  In February 2014, Dr. Stephanie Griffin examined Packer to determine whether he was disabled under the New Hampshire Department of Health and Human Services guidelines.  AR 329. She noted that he has been fired from multiple jobs because he argued with management, but was polite and cooperative when she met with him. AR 330-331.  Dr. Griffin's only diagnosis for Packer was "major depressive disorder."  AR 333.  Dr. Griffin also opined that Packer "does not appear capable of adhering to a work schedule or maintaining appropriate interactions with supervisors/co-workers at this time . . . [but] does appear generally capable of making adequate work-related decisions." AR 333.  She did not explain how Packer's depression led to his

inability to get along with others.

In August 2014, Dr. Thomas Burns examined Packer in order to complete a Mental Health Evaluation Report for the New Hampshire Social Security Disability Determination Service. AR 384. Dr. Burns noted that Packer was of average intelligence, "capable of taking care of his personal needs," "able to communicate and interact with people around him adequately for most purposes," "able to concentrate and focus his energies effectively enough to complete any tasks he chooses to undertake," but had a "long history of creating conflict between himself [and] coworkers," and was "quietly provocative [and] negative." AR 382, 384-385. Ultimately, Dr. Burns diagnosed Packer with "Personality Disorder with Antisocial and Narcissistic Features." AR 385.

In September 2014, Dr. Edward Martin reviewed Packer's medical records in order to complete a Mental Residual Functional Capacity Assessment. AR 134-136. He noted that Packer's only mental impairments are moderate limits to his "ability to work in coordination with or in proximity to others without being distracted by them" and his "ability to interact appropriately with the general public." AR 135. Dr. Martin

noted that Packer claimed that he had poor memory and
concentration as well, but that these claims were not credible.
AR 135.  Dr. Martin also noted that Packer "is able to accept
simple instructions and to respond appropriately to non-
confrontational supervisory criticism and to changes in the work
situation."  AR 136.

In November 2015, Dr. Wojcik examined Packer, and completed
a report and a "Mental Residual Functional Capacity
Questionnaire."  AR 518, 523.  The questionnaire was a check-box
form, in which Dr. Wojcik stated Packer had "major depressive
disorder," "panic disorder," and "melancholic features," and
checked off numerous boxes indicating that Packer had various
symptoms of these diagnoses.  AR 518-519.  Dr. Wojcik also
described Packer as "socially withdrawn" and of a "low IQ," but
provided little to no explanation for these diagnoses.  AR 521.

Dr. Wojcik also completed a report based on a two-hour
interview with Packer and a review of his previous medical
records.  AR 518, 523.  In the report, Dr. Wojcik diagnosed
Packer with depression, panic disorder, internet gaming
disorder, and cannabis use disorder (though that disorder is
described as "in remission").  AR 528.  Dr. Wojcik also noted

that Packer had a "personality disorder," due to his "avoidance of social activities, his having little interest in having sexual experiences with his girlfriend, his lack of close friends, and his flat affect."  AR 528.

The ALJ's mental RFC determination is supported by substantial evidence because it is the result of the ALJ's weighing of the various medical experts' opinions.  While Dr. Burns, Dr. Griffin, and Dr. Wojcik all opined that Packer would have difficulty getting along with others in the workplace, their opinions did not conclusively establish that he had a mental disorder that would prevent him from working with others. Furthermore, Dr. Burns, who examined Packer directly (and did not merely review his medical records), found that Packer was "able to communicate and interact with people around him adequately" and was "able to concentrate and focus his energies effectively enough to complete any tasks he chooses to undertake."  AR 384.  Moreover, Dr. Martin noted that Packer was only **moderately** limited in his "ability to work in coordination with or in proximity to others" and his "ability to interact appropriately with the general public."  AR 135.  Therefore, the ALJ's RFC, which stated that Packer "may only have brief and

superficial interaction with the general public," was supported by the opinion of multiple experts.  AR 27.

Moreover, the ALJ included the same limitations from the RFC in the hypothetical posed to the vocational expert.  AR 118. The ALJ stated that the hypothetical individual "can ask simple questions and request assistance . . . accept simple instructions, and respond appropriately to non-confrontational supervisory criticism . . . [and] should have a somewhat isolated workspace in order to avoid being distracted by coworkers and the general public."  AR 118.  Despite these limitations, the vocational expert stated there were still jobs in the national economy that the hypothetical claimant could do.[2] AR 118-119.

### 2.  Physical RFC: Limited use of his Hands

Packer claims that the ALJ erred by rejecting the opinion of his "treating source," Dr. Khosro Frahad, without good reason.  Doc. 9 at 11.  The Commissioner agrees that Dr. Farhad

---

[2] When the ALJ further modified the hypothetical to require a work environment of "total isolation," there were no jobs that the hypothetical claimant could perform.  AR 120.  But, as stated above, Packer's RFC did not require total isolation, and therefore, this more restricted hypothetical does not apply to him.

is Packer's treating source, but argues that the ALJ properly considered and rejected Dr. Farhad's opinion because it was not supported by other substantial evidence in the record.  Doc. 18-1 at 17.

An ALJ must give a "treating source's" opinion "controlling weight" if that opinion is well-supported and consistent with substantial evidence.  20 C.F.R. § 404.1527(c)(2); see Foley v. Astrue, No. 09-10864, 2010 WL 2507773, *8 (D. Mass. June 17, 2010).  Even if a treating source's opinion does not satisfy these requirements, "it may be 'entitled to deference.'" Douglas v. Colvin, 2016 DNH 176, *6 (quoting SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)).  Further, if the ALJ rejects the opinion of a treating source, the ALJ must give "good reasons" for his determination, which must be "both specific and supportable."  Jenness v. Colvin, 2015 DNH 167, *6 (citations omitted).  If, on the other hand, it is not possible to "determine whether the medical opinion evidence was considered [by the ALJ] and implicitly discredited or instead was simply overlooked," I must remand.  Kenerson v. Astrue, 2011 DNH 074, *4 (internal quotations omitted).  As long as the ALJ satisfies this standard, I will uphold his decision to discount a treating

source's opinion.  Costa v. Astrue, 565 F.Supp.2d 265, 271 (D. Mass. 2008).

The record contains evidence of two examinations by Dr. Farhad, in November 2014 and June 2015.  In November 2014, Dr. Farhad examined Packer and diagnosed him with Polyneuropathy. AR 505, 507.  Symptoms of his polyneuropathy included an "intermittent burning sensation in his feet" and "chronic lower back pain."  AR 505.

In June 2015, Dr. Farhad examined Packer again, and filled out a check-box form entitled "Medical Source Statement of Ability to do Work-Related Activities."  AR 395.  Dr. Farhad stated that Packer could only occasionally lift "less than 10 pounds," stand "less than 2 hours in an 8-hour workday," and had limited ability to use his hands for "reaching," "handling," "fingering," and "feeling." AR 395, 397.

The record also contains evaluations of Packer's physical capabilities by other physicians.  Dr. David Lunianski, Packer's primary care physician, examined Packer both in May 2014 and June 2015.  AR 362, 475.  In the 2014 evaluation, Dr. Lunianski noted that Packer was "extremely overw[eigh]t," had "lumbar back pain" that was "dull and non-radiating," and did not have

numbness, tingling, or weakness in his lower extremities or feet. AR 362. Notably, Dr. Lunianski noted that Packer could "occasionally lift and/or carry [up to] 20 pounds." AR 475.

In the 2015 evaluation, Dr. Lunianski completed the same check-box form that Dr. Farhad had completed, entitled "Medical Source Statement of Ability to do Work-Related Activities." AR 475. He stated that Packer could occasionally lift 20 pounds, stand or walk for at least two hours in an eight hour work day, has an unlimited ability to use his hands for handling or fingering, and a limited ability to use them for reaching and feeling. AR 475, 477. Dr. Lunianski added several written noted to the check-box form, including one stating, "Packer smokes excessively and is not in good condition. He gets short of breath when walking and has difficulty standing for any per[iod] of time due to foot, leg, [and] back pain." AR 475.

In July 2014, Dr. Burton Nault reviewed Packer's medical records in order to complete a Physical Residual Functional Capacity Assessment. AR 132-134. He noted that Packer could occasionally lift twenty pounds, stand or walk for up to two hours per day, occasionally climb ramps or stairs, balance, bend over, kneel, crouch, or crawl, and never climb ladders. AR 132-

33.  These limitations were due to Packer's obesity and

diabetes.  AR 134.

In September 2015, Dr. Robert Allister examined Packer and

found that he had "carpal tunnel syndrome," "foot and leg pain,"

but "normal" "muscle strength and tone."  AR 410-11.

The ALJ evaluated these various medical opinions, and

stated that Packer had an RFC in between sedentary work and

light work.  AR 27.  See 20 C.F.R. § 404.1567(a)&(b).  The ALJ

stated Packer could do "sedentary work" – a job requiring

"lifting no more than 10 pounds at a time and occasionally

lifting or carrying [light objects] and small tools" and

involving occasional walking and standing, see id., – but he

could also "carry 10 pounds frequently and 20 pounds

occasionally," never climb ladders, ropes, or scaffolds, and

"occasionally climb ramps and stairs, balance, stoop, crouch,

[or] crawl."  AR 27.

In reaching this conclusion, the ALJ obviously accepted

some of Dr. Farhad's opinion and included some physical

limitations, but rejected Dr. Farhad's finding that Packer could

not use his hands.  AR 33.  The ALJ reached this conclusion for

multiple reasons.  First, the ALJ stated, "With respect to the

claimant's allegations of neuropathic pain and sensory loss
affecting the bilateral hands, I find no objective evidence to
support these allegations." AR 29. She noted, "neurological
records do not document any evidence of muscle weakness or
reduced grip strength in the claimant's bilateral hands." Id.
Furthermore, she specifically credited Dr. Lunianski's opinion
"that [Packer] can lift up to 20 pounds occasionally, stand and
walk at least 2 hours in an 8-hour workday, and has no
restriction on sitting." AR 33. As shown above, Dr.
Lunianski's opinion that Packer could do some minimal lifting,
carrying, and walking is consistent with the opinions of Dr.
Nault and Dr. Allister, while no other physician, nor the
medical records, support Dr. Farhad's opinion. This is
sufficient to support the ALJ's RFC determination.[3] See
Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3

---

[3] The ALJ also noted that Packer's activities of daily life –
most notably, his excessive video game playing – support a
finding that he has no issues with manual dexterity. Packer
takes issue with this reasoning because he claims the ALJ did
not have any evidence of the type of video games he played, and
whether they actually required manual dexterity. Even assuming
that the ALJ should not have considered Packer's activities of
daily life, there is sufficient other evidence in support of the
ALJ's physical RFC determination.

(1st Cir. 1987) (ALJ can discount the opinion of a doctor if it is inconsistent with other evidence in the record).

## B.  **Vocational Expert Opinion (Step Five)**

Packer argues that the vocational expert's opinion was invalid because the jobs that the vocational expert testified Packer could do were classified as "light" in the Dictionary of Occupational Titles (DOT), while his RFC explicitly restricted him to "sedentary" work.  Doc. 9 at 13.

Generally, an ALJ can rely on the opinion of a vocational expert to determine whether a claimant is disabled if the vocational expert's opinion is consistent with the DOT.[4]  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); see Sanchez v. Colvin, 134 F. Supp. 3d 605, 619 (D. Mass. 2015); Szumylo v. Astrue, 815 F. Supp. 2d 434, 441 (D. Mass. 2011).

Here, the ALJ determined that Packer's RFC allowed him to do "sedentary work . . . except he can lift and carry 10 pounds frequently and 20 pounds occasionally[,] . . . cannot climb ladders[,] ropes[,] and scaffolds[,] . . . can occasionally climb ramps and stairs, balance, stoop, crouch, and crawl[, and]

---

[4] If the opinion is inconsistent with the DOT, the ALJ must give other reasons for relying on the vocational expert's opinion.

may only have brief and superficial interaction with the general public." AR 27.

The hypothetical that the ALJ posed to the vocational expert described an individual who could,

> [lift] 20 pounds occasionally, 10 pounds frequently, standing and walking up to two hours per day, sitting for six [hours], occasional stairs and ramps, occasional balance, stoop, kneel, crouch, and crawl, no ladders, ropes or scaffolds. . . can ask simple questions and request assistance, he is able to accept simple instructions, and respond appropriately to a non-confrontational supervisory criticism[, and] [h]e should have a somewhat isolated workspace in order to avoid being distracted by coworkers and the general public.

AR 116-118.

In response to this hypothetical, the vocational expert stated that Packer could work as a "hand package inspector," "price marker," and "electric assembler." AR 35. The DOT classifies all of these jobs as "light," which is one step more strenuous than the "sedentary" category of jobs. See 20 C.F.R. § 404.1567 ("Physical exertion requirements").

Packer argues that the vocational expert's testimony that the hypothetical claimant with a "sedentary" RFC could do these three jobs is inconsistent with the DOT, which classifies these jobs as "light."

If Packer's RFC was merely for "sedentary" work, and if the vocational expert had testified that the hypothetical claimant could perform "light" work, with no modification, then I would agree. But, this is not the case. As shown above, Packer's RFC allowed him to do "sedentary" work <u>and</u> to carry 10 pounds frequently and 20 pounds occasionally, walk up stairs and ramps, and balance, stoop, kneel, crouch, and crawl. AR 27. Therefore, his RFC was somewhere in between complete "sedentary" work and "light" work. See <u>Blankenship v. Comm'r of Social Sec.</u>, 624 Fed. Appx. 419, 427 (6th Cir. 2015) (permitting an RFC determination between "sedentary" and "light" work, and rejecting an "either/or dichotomy between light work and sedentary work").

Moreover, the vocational expert did not merely list "light" jobs in his opinion. The vocational expert noted that not every single job in each category requires "light" exertion. AR 118. He then reduced the number of jobs that the hypothetical claimant could perform in each category, to correspond with the hypothetical claimant's ability. <u>Id.</u> The vocational expert thus stated that the hypothetical claimant could only perform 70 percent of the jobs available as a hand package inspector, 50

percent of the jobs available as a price marker, and 70 percent of the jobs as an electrical assembler. See Fenton v. Apfel, 149 F.3d 907, 911 (8th Cir. 1998) (affirming the ALJ's reliance on a vocational expert who testified that a claimant whose RFC was in between sedentary and light work could perform 10 percent of the light unskilled jobs). Even after these reductions, there was still a significant number of jobs in the national economy that the hypothetical claimant could do. Therefore, the vocational expert's testimony was consistent with the DOT, and so I affirm the ALJ's decision.

## IV. __CONCLUSION__

For the aforementioned reasons, I grant the Acting Commissioner's motion to affirm, Doc. 18, and deny Packer's motion to reverse, Doc. 9. The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

May 30, 2018

cc:   Alexandra M. Jackson, Esq.

Karen B. Fitzmaurice, Esq.
Robert J. Rabuck, Esq.